[Cite as *State v. Robinson*, 2019-Ohio-5370.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-04-009 |
| | : | O P I N I O N |
| - vs - | | 12/30/2019 |
| | : | |
| ROBERT L. ROBINSON, II, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case Nos. CR 20180131 and CRI20180036

Stephen J. Pronai, Madison County Prosecuting Attorney, Nicholas A. Adkins, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for appellee

The Tyack Law Firm Co., L.P.A., Jonathan T. Tyack, Holly B. Cline, 536 South High Street, Columbus, Ohio 43215, for appellant

**PIPER, J.**

{¶ 1} Appellant, Robert Robinson, appeals his convictions in the Madison County Court of Common Pleas for possession of drugs and operating a vehicle with a hidden compartment used to transport a controlled substance.

{¶ 2} A drug task force with the Columbus Police Department was investigating Robinson on suspicion of drug-related activity. As part of that investigation, a Columbus

detective followed Robinson's vehicle to a location in Indiana. The detective informed an Ohio State Highway Patrol trooper of the investigation and that Robinson had left Indiana and was driving in the direction of Madison County, Ohio.

{¶ 3} The trooper, who was positioned on Interstate 70, observed Robinson's vehicle pass him and noticed the vehicle's window tint was darker than that authorized by law. The trooper then pulled onto the interstate and began following Robinson. During this time, the trooper observed Robinson following the vehicle in front of him too closely. Based on these two violations, the trooper initiated a traffic stop. When the trooper approached Robinson's vehicle, he could smell the odor of raw marijuana emanating from the car. Based on the odor of raw marijuana, the trooper had Robinson step out of his vehicle and sit in the back of his patrol car.

{¶ 4} Backup arrived on the scene, and the trooper and a sergeant searched Robinson's car. The sergeant, who was searching the backseat area, pulled down a rear armrest and determined that there was a solid surface behind the fabric of the rear seat armrest where there was normally a passthrough to the trunk. The sergeant observed signs that the area behind the armrest and a portion of the trunk had been modified with the existence of an aftermarket bracket. He also noticed non-manufacturer welding, paint "runs," Bondo, and post-production tool markings. Upon suspecting a hidden compartment, troopers then moved Robinson's vehicle to a patrol post where it was further searched. Troopers located five pounds of marijuana, a handgun, and $25,000 cash in a hidden compartment in Robinson's vehicle.

{¶ 5} Robinson was arrested and eventually charged with possession of drugs, having weapons under disability, and operating a vehicle with a hidden compartment for the transportation of controlled substances. Robinson filed multiple motions to suppress the evidence seized, claiming that the traffic stop and subsequent search were unconstitutional.

The trial court denied Robinson's motions, and the matter proceeded to trial.

{¶ 6} The state dismissed the weapons under disability charge, and the jury found Robinson guilty on the two remaining counts. The trial court merged the convictions for purposes of sentencing, and sentenced Robinson to a five-year sentence. Robinson now appeals his convictions, raising the following assignments of error, which we will combine and discuss out of order for ease of discussion.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED WHEN IT DENIED MR. ROBINSON'S MOTIONS TO SUPPRESS, AS THE STOP OF MR. ROBINSON'S VEHICLE VIOLATED HIS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT ERRED WHEN IT DENIED MR. ROBINSON'S SUPPRESSION MOTIONS, AS THE CONTINUED DETENTION OF MR. ROBINSON EXCEEDED THE PURPOSE AND SCOPE OF THE INITIAL STOP, IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 11} Assignment of Error No. 3:

{¶ 12} THE TRIAL COURT ERRED WHEN IT DENIED MR. ROBINSON'S SUPPRESSION MOTIONS, AS THE TROOPERS DID NOT HAVE PROBABLE CAUSE TO SEARCH THE VEHICLE'S TRUNK.

{¶ 13} Assignment of Error No. 4:

{¶ 14} THE WARRANTLESS SEIZURE OF MR. ROBINSON'S VEHICLE – WHICH WAS DRIVEN TO THE PATROL POST BY A TROOPER – AND MORE INTRUSIVE SEARCH OF MR. ROBINSON'S VEHICLE VIOLATED HIS RIGHTS UNDER THE FOURTH

AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 15} Robinson argues in his first four assignments of error that the trial court erred in denying his motions to suppress.

{¶ 16} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8.

{¶ 17} When reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 18} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is reasonable. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814.

{¶ 19} When a law enforcement officer initiates a valid traffic stop, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's license, registration,

and vehicle plates. *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343, ¶ 28. The continued detention remains legal if based on "articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention." *State v. Robinette*, 80 Ohio St.3d 234, 240 (1997).

{¶ 20} If the circumstances give rise to a reasonable suspicion of some other illegal activity, different than that which triggered the stop, then the officer may detain the driver for as long as the new articulable reasonable suspicion exists. *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586. The existence of reasonable and articulable suspicion is determined by evaluating the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 13.

{¶ 21} Further, the automobile exception to the warrant requirement of the Fourth Amendment provides that law enforcement officers may search a motor vehicle without a warrant if the officers have probable cause to believe the vehicle contains contraband. *State v. Lynn*, 12th Dist. Butler Nos. CA2017-08-129 and CA2017-08-132, 2018-Ohio-3335. Probable cause in these instances is "a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *Popp* at ¶ 27. The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted the search. *Godwin*, 2006-Ohio-3563.

{¶ 22} With the Ohio Supreme Court's recognition of the automobile exception in *State v. Moore*, 90 Ohio St.3d 47, 51 (2000), Ohio courts were advised that a trunk "and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches." *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 51. For example, the *Farris* court held that "the odor of burnt marijuana in the passenger

- 5 -

compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle." *Id.* at ¶ 52. Instead, the officer needs to justify his or her search beyond the passenger compartment with other facts and circumstances supporting probable cause to search the trunk. *Id.*

{¶ 23} However, and as this court has previously determined, there is a difference between the odor of raw marijuana and burnt marijuana when used to establish probable cause for further investigation into the trunk area of a vehicle. The odor of *raw* marijuana provides different probable cause than the odor of *burnt* marijuana. *Lynn*, 2018-Ohio-3335 at ¶ 20. "The odor of raw marijuana - especially an overwhelming odor of raw marijuana - creates probable cause to believe that a large quantity of raw marijuana will be found." *State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 22. Under such circumstances, "[a]n officer may rationally conclude that a large quantity of raw marijuana would be located in a vehicle's trunk." *Id.* Where an officer detects a strong odor of raw marijuana, but no large amount is found within the passenger compartment of the vehicle, the officer has probable cause to search the trunk, including the trunk's contents. *State v. Vang*, 12th Dist. Madison No. CA2018-06-017, 2019-Ohio-195.

{¶ 24} After reviewing the record, we find that the trial court did not err in denying Robinson's motions to suppress. The trial court viewed a video of the events leading up to and including the traffic stop, which supported the trooper's initial observations that the window tint on Robinson's vehicle was too dark and that Robinson was following a vehicle too closely. Both of the trooper's observations demonstrate that Robinson violated traffic laws so that the initial stop of Robinson's vehicle was valid.

{¶ 25} The trooper testified that when he first observed Robinson's vehicle, the window tint was darker than the other vehicles passing by, and that he was unable to see Robinson through the window. Specifically, the trooper testified that the window tint was "extremely

dark" and that he "could barely see the silhouette of the driver." The trooper further testified that with other vehicles, he was able to see through the windows to the trees on the other side of the road, which he was unable to do with Robinson's windows given the dark tint.

{¶ 26} The trooper had been trained to identify if a window was too darkly tinted and had 19 years of experience during which he determined hundreds of times whether window tint was too dark. Once the trooper was able to test the window tint, Robinson's tint allowed only 32 percent of light passage, while the required amount by law is 50 percent.

{¶ 27} Additionally, the trooper observed Robinson's vehicle following too closely to the vehicle in front of him. The trooper testified that Robinson's vehicle came within one to one and one-half car lengths from the vehicle in front of him, and that Robinson was traveling between 65 to 70 m.p.h. Given the speed at which Robinson was traveling, he should have maintained approximately six and one-half car lengths behind the vehicle in front of his vehicle.

{¶ 28} The trooper's observations provided probable cause that Robinson committed two separate traffic violations, thus rendering the initial stop reasonable.[1] The fact that the trooper was aware of an ongoing investigation by the Columbus Police Department into Robinson's alleged drug activity did nothing to invalidate the reasonableness of the trooper's stop because Robinson committed two traffic violations that provided the necessary probable cause to initiate the traffic stop. It is irrelevant that other members of law enforcement suspected Robinson of drug activity because the trooper who initiated the traffic stop independently observed traffic violations. *See State v. Kelly*, 188 Ohio App.3d 842, 2010-

---

1. Robinson suggests in his brief that the trooper's testimony lacked credibility. However, the trial court specifically addressed the trooper's credibility and found that his testimony was corroborated by the video evidence of the stop and that the trooper had relevant training and experience to reach the conclusions he did. Moreover, the trial court specifically noted that it had reviewed the circumstances with a "critical eye" given the trooper's knowledge of the ongoing investigation of Robinson by the Columbus Police Department prior to the traffic stop. Even when viewed with a critical eye, the trial court never found the trooper's testimony lacked credibility.

Ohio-3560 (12th Dist.) (noting the validity of traffic stops despite pretext or ulterior motive).

{¶ 29} Once the valid traffic stop occurred, the trooper was permitted to investigate the reason for the stop, which the trooper did by making contact with Robinson. The trooper testified that upon approaching Robinson's passenger side front window, there was "immediately a strong odor of raw marijuana." This strong odor of raw marijuana gave the trooper necessary probable cause to search for the source of the marijuana odor.

{¶ 30} No marijuana was immediately found inside the vehicle's passenger compartment. Yet, suspicions arose around a rear seat passthrough, which appeared to have been sealed off. Once the troopers did not find marijuana in the passenger compartment, they had probable cause to continue the search into the trunk area as a potential source for the raw marijuana smell. Finding no marijuana in the trunk, it became apparent there was a hidden compartment.

{¶ 31} The trooper testified that moving Robinson's vehicle was necessary for safety reasons given the vehicle's location on the side of the interstate and because the troopers lacked necessary tools to continue the search of Robinson's hidden compartment. The fact that continuing the search necessitated moving the vehicle to increase officer safety and to allow access to the necessary tools in no way lessens the probable cause that was established at the scene of the initial traffic stop. *See State v. Blatchford*, 12th Dist. Preble No. CA2015-12-023, 2016-Ohio-8456, ¶ 42 (affirming denial of motion to suppress where law enforcement took a vehicle to a secondary location to obtain the proper tools to gain access to a hidden compartment).

{¶ 32} After reviewing the record, we find that the trooper's valid traffic stop evolved into a reasonable detention for purposes of investigation and that none of Robinson's Fourth Amendment rights were violated during the search and seizure. As such, the trial court properly denied Robinson's motions to suppress, and his first four assignments of error are

overruled.

{¶ 33} Assignment of Error No. 6:

{¶ 34} THE JURY'S VERDICT IS NOT SUSTAINED BY SUFFICIENT EVIDENCE.

{¶ 35} Assignment of Error No. 7:

{¶ 36} THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 37} Robinson argues in his sixth and seventh assignments of error that his convictions are against the manifest weight of the evidence and not supported by sufficient evidence.

{¶ 38} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 20. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 39} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A determination that a conviction is supported by the manifest weight

of the evidence will also be dispositive of the issue of sufficiency. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 48.

{¶ 40} Robinson was convicted of possession of drugs in violation of R.C. 2925.11(A), which prohibits a person from possessing a controlled substance. Robinson was also convicted of operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241(C), which provides, "No person shall knowingly operate, possess, or use a vehicle with a hidden compartment with knowledge that the hidden compartment is used or intended to be used to facilitate the unlawful concealment or transportation of a controlled substance."

{¶ 41} After reviewing the record, we find that Robinson's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. The record is undisputed that troopers discovered approximately five pounds of marijuana, a gun, and $25,000 in the hidden compartment in Robinson's vehicle. The state presented evidence that Robinson was alone in his vehicle on the day he was pulled over, and that he admitted ownership of the vehicle for two years as of the time of the traffic stop. Robinson also admitted that no one else drove his vehicle.

{¶ 42} A state's witness testified that Robinson discussed the money during an interview. The detective testified that when he spoke to Robinson about how he made his money, Robinson stated, "I'll worry about that when I try to get my money back." The detective asked Robinson if he was speaking about the money troopers located in his vehicle, to which Robinson responded, "if that's the case."

{¶ 43} Robinson also admitted during the interview that he understood he would be charged with possession because the marijuana was found in his vehicle. The detective testified that he understood Robinson's statement as an admission that the marijuana belonged to him.

- 10 -

{¶ 44} When this evidence is viewed in a light most favorable to the prosecution, we find that the jury did not clearly lose its way or create such a manifest miscarriage of justice that Robinson's convictions must be reversed and a new trial ordered. Because we find that Robinson's conviction was supported by the weight of the evidence, it necessarily follows that his conviction was also supported by sufficient evidence. As such, Robinson's sixth and seventh assignments of error are overruled.

{¶ 45} Assignment of Error No. 5:

{¶ 46} THE TRIAL COURT ERRED WHEN IT RULED THAT EVIDENCE REGARDING (1) THE CPD'S INVESTIGATION OF MR. ROBINSON, AND (2) [A TROOPER'S] COMMUNICATIONS WITH CPD DETECTIVES ABOUT MR. ROBINSON BEFORE THE STOP WERE ADMISSIBLE.

{¶ 47} Robinson argues in his fifth assignment of error that the trial court erred in admitting evidence regarding the Columbus Police Department's investigation.

{¶ 48} According to Evid.R. 403(A), relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The admission or exclusion of evidence lies within the sound discretion of the trial court. *State v. Maher*, 12th Dist. Fayette No. CA2016-10-015, 2017-Ohio-7807, ¶ 29. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226. Unless the trial court clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court. *State v. Finnerty*, 45 Ohio St.3d 104, 109 (1989).

{¶ 49} During the trial, the state presented testimony regarding the circumstances under which the trooper who initiated the stop became aware that Robinson was traveling

- 11 -

back to Ohio from Indiana. Over Robinson's objections, the trial court permitted the trooper to testify that he became aware that Robinson was being investigated by another law enforcement agency, and that the agency asked the trooper to be on the lookout for Robinson's vehicle. The trooper also testified that he had ongoing communication with the agency throughout the day and learned that Robinson was coming from Indiana.

{¶ 50} However, the trial court limited the testimony and prohibited any discussion of Robinson's possible drug-related activities. The trial court reasoned that the limited background was necessary to help the jury understand why the trooper was on the lookout for Robinson's vehicle. The trial court also permitted the testimony to explain why the trooper had reason to believe Robinson was being deceptive when the traffic stop was initiated. The jury heard evidence that Robinson told the trooper that he was coming from Dayton, Ohio where he visited with his girlfriend, which the trooper had reason to believe was untruthful. The willingness to lie and deceive a law enforcement officer goes directly to the trooper's escalating suspicions of Robinson being involved in possible criminal activity. This also becomes important when the jury is evaluating the trooper's credibility and the reasonableness of his conduct.

{¶ 51} The trial court did not abuse its discretion in permitting the limited testimony. The jury only heard that Robinson was under investigation, but never heard evidence that the investigation involved drugs or the drug task force. This testimony provided context for the traffic stop and the trooper's initial interaction with Robinson. Thus, the testimony's probative nature was greater than any unfair prejudice. This is especially true where there was overwhelming evidence of Robinson's guilt, including the discovery of marijuana in Robinson's vehicle and Robinson's admission of owning the vehicle and being its only driver.

{¶ 52} We also note that while Robinson objected to the testimony, the record does not indicate that Robinson requested any limiting or cautionary instruction. The trial court

could have offered a specific instruction regarding the testimony's purpose or to instruct the jury that it was not to consider the evidence of an investigation for any other purpose than to provide context for the traffic stop or to demonstrate solely the inaccuracy of what Robinson told the trooper. Regardless, the mere mention of the initial investigation did not unfairly prejudice Robinson, and the trial court did not abuse its discretion in admitting the testimony. As such, Robinson's fifth assignment of error is overruled.

{¶ 53} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.