[Cite as *State v. Hentenaar*, 2020-Ohio-4503.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. CA2019-09-161 |
| Appellant, | : | O P I N I O N<br>9/21/2020 |
| | : | |
| - vs - | : | |
| | : | |
| JANET HENTENAAR, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-01-0117

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellant

Michele Temmel, 6 South Second Street, #305, Hamilton, Ohio 45011, for appellee

**M. POWELL, P.J.**

{¶ 1} Appellant, the state of Ohio, appeals the decision of the Butler County Court of Common Pleas granting a motion to suppress filed by appellee, Janet Hentenaar. For the reasons discussed below we reverse the decision granting the motion to suppress.

{¶ 2} In March 2019, a Butler County grand jury indicted appellee on one count of aggravated possession of drugs, a second-degree felony in violation of R.C. 2925.11(A).

The charge arose from law enforcement discovering methamphetamine on appellee while conducting a traffic stop on the vehicle in which she was a passenger. Appellee pled not guilty and subsequently filed a motion to suppress the evidence seized from the stop, claiming the police officer violated her rights under the United States and Ohio Constitutions because the officer lacked probable cause for the traffic stop. The trial court held a hearing on the motion to suppress in September 2019. At the hearing, the state called one witness, the police officer who made the traffic stop and subsequent arrest. The officer testified that on the evening of January 13, 2019 he was engaged in routine patrol along the southbound lanes of U.S. Route 127 ("U.S. 127") inside his jurisdiction. At that portion of the roadway, U.S. 127 had two lanes of travel for the southbound direction and the posted speed limit was 35 mph. The temperature that evening was around freezing and there was an accumulation of snow off the roadway, though the road surface itself was dry and clear of snow. The sun had set such that it was dark, however visibility was good because of artificial illumination from nearby streetlamps.

{¶ 3} Around 7:30 pm, the officer observed two vehicles traveling in the right lane of southbound U.S. 127. He immediately became concerned that the rear vehicle, a Hyundai sedan ("Hyundai"), was following the lead vehicle too closely. He watched the vehicles from his position behind them in the left lane for around thirty seconds to a minute and then pulled his police cruiser beside the Hyundai to get a better view of the distance between the two vehicles. The officer estimated that the Hyundai was travelling between 20 to 25 mph and was about one and a half to two car lengths behind the lead vehicle. The Hyundai was following the lead vehicle at such a distance that the officer testified another car could not safely move in between the two vehicles. As the officer kept pace with the Hyundai, the lead vehicle activated its right turn signal, slowed, and made a right turn into a Family Dollar parking lot. During this action, the officer testified that the Hyundai travelled

- 2 -

much closer to the lead vehicle although he did not notice any hard braking by the Hyundai. Based on the distance between the two vehicles during their entire course of travel, that is the initial driving along the road and the turning action, the officer initiated a traffic stop of the Hyundai for following too closely in violation of R.C. 4511.34(A).

{¶ 4} After the hearing, the trial court entered a written decision granting appellee's motion to suppress. The trial court determined that the police officer did not have probable cause to believe a violation of R.C. 4511.34(A) had occurred because the rationale provided by the officer was that he "felt" the distance between the two cars was too close. The trial court, citing *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 15, recognized that the determination of probable cause does not require a law enforcement officer to correctly predict that a conviction will result. Nevertheless, the trial court found that the officer's feeling was not supported by the facts to which he testified. Specifically the trial court found that the Hyundai could have been travelling as slow as 20 mph while maintaining a distance of two car lengths and it was possible the lead vehicle gave an improper turn signal before initiating its turn which could have justified the Hyundai's close approach during the turn. Ultimately, the trial court determined that the officer's testimony did not provide probable cause for believing a traffic code violation had been committed, especially in light of caselaw from this district recognizing a general guideline of one car length for every 10 mph of travel speed as an indicator of whether R.C. 4511.34(A) has been violated.

{¶ 5} The state now appeals raising one assignment of error for review:

{¶ 6} THE BUTLER COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS.

{¶ 7} In its sole assignment of error, the state presents two issues for review. First, the state contends that the trial court erred because it did not consider whether the officer

had reasonable suspicion to stop the vehicle.  Second, the state argues that the trial court erred in granting the motion to suppress because R.C. 4511.34(A) sets out an imprecise requirement and therefore the police officer made a reasonable mistake of law.

{¶ 8}  Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact.  *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15.  The trial court is in the best position to resolve factual issues by evaluating witness credibility and weighing the evidence.  *State v. Wilson*, 12th Dist. Butler No. CA2019-08-141, 2020-Ohio-3227, ¶ 16; *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8.  Therefore, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Robinson*, 12th Dist. Madison No. CA2019-04-009, 2019-Ohio-5370, ¶ 17.  However, an appellate court independently reviews the trial court's legal conclusions, without deference to the trial court's decision, to determine whether, as a matter of law, the facts satisfy the appropriate legal standard.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8; *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 9}  The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops.  *Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563 at ¶ 11.  The touchstone of the Fourth Amendment is reasonableness.  *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 14, citing *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, (1991).  A passenger in an automobile involved in a traffic stop is "seized" and may challenge the constitutionality of the stop.  *Brendlin v. California*, 551 U.S. 249, 251, 127 S.Ct. 2400 (2007).  Where a law enforcement officer has probable cause or an articulable, reasonable suspicion to stop a motorist for any criminal violation, including a minor traffic

violation, the stop is constitutionally valid.[1]  *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996); *accord State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 23. As explained by the Ohio Supreme Court,

> [p]robable cause is determined by examining the historical facts, i.e., the events leading up to a stop or search, "viewed from the standpoint of an objectively reasonable police officer." *Ornelas v. United States* (1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911.  Determination of probable cause that a traffic offense has been committed, "'like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop*.'"  (Emphasis sic.) *Erickson*, 76 Ohio St.3d at 10, 665 N.E.2d 1091, quoting *United States v. Ferguson* (C.A.6, 1993), 8 F.3d 385, 391.  Thus, the question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances.

*Godwin* at ¶ 14.  The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  *State v. Pfeiffer*, 12th Dist. Butler No. CA2003-12-329, 2004-Ohio-4981, ¶ 23, citing *State v. Moeller*, 12th Dist. Butler No. CA99-07-128, 2000 Ohio App. LEXIS 4904, *8 (Oct. 23, 2000); *accord State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 16 ("Probable cause is generally defined as a reasonable ground of suspicion supported by facts and circumstances sufficiently strong in themselves to warrant a prudent person in believing an accused person has committed or was committing an offense").  Finally, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317 (1983).

---

1. This court has generally classified traffic stops into two types: non-investigatory and investigatory. *State v. Ratliff*, 12th Dist. Butler No. CA2019-09-163, 2020-Ohio-3315, ¶ 6.  A non-investigatory stop is one in which the officer has probable cause based on an observation that a traffic code violation has been committed. *Id.* On the other hand, an investigatory stop is based on reasonable suspicion that criminal behavior is imminent or has occurred. *Id.*

{¶ 10} The reasonable suspicion standard, on the other hand, is a less demanding standard than probable cause but still requires more than an officer's undeveloped suspicion or hunch. *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 33. Reasonable suspicion is "based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991); *accord City of Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999).

{¶ 11} At issue here is R.C. 4511.34(A). Pursuant to this statute,

> [t]he operator of a motor vehicle * * * shall not follow another vehicle * * * more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic upon and the condition of the highway.

R.C. 4511.34(A). In considering whether a law enforcement officer has a basis to effect a traffic stop for a violation of this statute, this court and other Ohio appellate courts have discussed a general guideline of one car length of separation for every ten miles per hour rate of speed driven to more readily specify a reasonable distance between vehicles travelling on the road. *State v. Bell*, 12th Dist. Preble No. CA2001-06-009, 2002-Ohio-561; *State v. Kelly*, 188 Ohio App.3d 842, 2010-Ohio-3560, ¶ 18-20 (12th Dist.); *State v. Quaker*, 3d Dist. Allen No. 1-19-33, 2020-Ohio-2887, ¶ 19. This guideline, however, is not a "bright-line rule" for determining whether the officer had an adequate basis to believe a violation of R.C. 4511.34(A) had occurred. As the 6th District Court of Appeals has explained,

> [j]ust as "reasonable and prudent" is not a hard and fast standard, neither is the estimate of one car length per ten miles per hour travelled a hard and fast means of measurement. The purpose of the stated portion of the statute is to prevent rear-end collisions. Whether a person could stop in time to avoid a rear-end collision is thus the important issue.

*State v. Gonzalez*, 43 Ohio App.3d 59, 61 (6th Dist.1987). When an officer observes a

vehicle following another vehicle in a manner which the officer appreciates to be an unsafe distance and provide the facts and circumstances for that understanding, then the officer has a legitimate basis to believe that a violation of R.C. 4511.34(A) has occurred.

{¶ 12} After review of the record, we find that the trial court erred by granting the motion to suppress. First, the trial court required more certainty from the officer's testimony than the applicable legal standard. The probable cause standard does not require an actual showing of a violation, just a probability of the violation. *State v. Bullock*, 12th Dist. Clinton CA2016-07-018, 2017-Ohio-497, ¶ 6; *See also City of Wilmington v. Lubbers*, 12th Dist. Clinton No. CA2013-06-013, 2014-Ohio-3083 ¶ 14. The trial court discounted the probability of a violation by considering the minimum estimated speed of the Hyundai, that is, 20 mph, with the maximum estimated separation between the vehicle, that is, a distance of two car lengths, to conclude that the Hyundai was approximately within the "one car length per ten miles per hour rate of speed" guideline discussed above. However, if the trial court had compared the minimum estimated speed of 20 mph with the minimum estimated separation of one and one-half car lengths, then the Hyundai's driving would have fallen outside the parameters of the guideline relied on by the trial court. Moreover, the trial court disregarded the officer's observation that the two vehicles came much closer to each other during the turning maneuver by requiring the officer to precisely quantify the distance between the vehicles. The officer testified that during the lead car's turn maneuver the Hyundai did not slow down evenly with the lead car and failed to preserve its initial separation from that vehicle. While the officer did not notice any abrupt stopping by the Hyundai, he had to abruptly brake to maintain his pace alongside the Hyundai. The officer also testified that the separation between the Hyundai and lead vehicle closed quickly. These factors, viewed together, provide a reasonable basis for the officer to believe there was a strong probability the Hyundai violated R.C. 4511.34(A) by following too closely.

{¶ 13} Second, the trial court's analysis included a consideration of whether the Hyundai had a justification or defense to the traffic violation based upon the possibility the lead vehicle improperly signaled its turn. "'The fact there may be a logical reason to excuse what would otherwise be a traffic violation does not, in hindsight, eradicate a proper cause for stopping the vehicle in the first instance.'" *Pfeiffer*, 2004-Ohio-4981 at ¶ 26, quoting *State v. Grimsley*, 10th Dist. Franklin No. 02AP-502, 2003-Ohio-514, ¶ 16. A law enforcement officer does not have to consider whether a motorist had a possible defense to the violation of the statute before initiating a stop. *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539 at ¶ 17; *accord State v. Batcho*, 11th Dist. Portage No. 2018-P-0107, 2019-Ohio-2511, ¶ 30. The fact that the driver of the Hyundai may have had some defense for not maintaining enough space during the turn is irrelevant to the officer's basis for the stop.

{¶ 14} Based on the totality of the circumstances, the trial court erred in determining that the traffic stop was constitutionally invalid. The police officer observed that the Hyundai was following too closely to the lead vehicle, especially as the lead vehicle slowed to turn. Consequently, it was reasonable for the officer to conclude that the Hyundai committed a violation of R.C. 4511.34(A) and this violation provided a valid basis to stop the vehicle. In light of this determination, the state's second issue—whether the officer made an objectively reasonable mistake of law—is moot and need not be addressed.

{¶ 15} Accordingly, the state's sole assignment of error is sustained.

{¶ 16} Judgment reversed and remanded.

S. POWELL and PIPER, JJ., concur.